UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DAVID ALTAMIRANO,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security [1],<br><br>Defendant. | Case No.:   23-cv-601-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MERITS BRIEF AND REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF No. 17]** |

Plaintiff Michael David Altamirano brought this action for judicial review of the Social Security Commissioner's ("Commissioner" or "Defendant") denial of his claim for "Social Security Disability [and Supplemental Security Income disability] benefits for lack of disability." ECF No. 1. Presently before the Court are Plaintiff's October 25, 2023 Merit Brief ("Brief") [ECF No. 17], Defendant's December 1, 2023 Opposition to Plaintiff's Brief ("Oppo.") [ECF No. 22], and Plaintiff's December 15, 2023 reply in support of his Brief ("Reply"). ECF No. 23. For the reasons set forth below, Plaintiff's Merit Brief is **GRANTED**.

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. Proc. 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this action. This action survives notwithstanding the party substitution. See 42 U.S.C. § 205(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

## PROCEDURAL BACKGROUND

On December 4, 2020, Plaintiff filed an application for Title II disability insurance benefits alleging his disability began on October 19, 2019. Administrative Record ("AR") 201-202. On February 5, 2021, the application was initially denied, and denied upon reconsideration on May 13, 2021. AR 101-107. On December 1, 2021, an Administrative Law Judge ("ALJ") conducted a telephonic hearing where Plaintiff, an impartial medical expert, and an impartial vocational expert ("VE") testified. AR 40-55. In a written decision dated December 4, 2020, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. AR 23-39. On February 3, 2023, the Appeals Council denied Plaintiff's request for review. AR 14-19.

On April 4, 2023, the instant action ensued. ECF No. 1. The same day, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") which the Court denied without prejudice on April 6, 2023, and the Court dismissed Plaintiff's complaint with leave to amend for failing to state sufficient facts to state a claim for relief. ECF Nos. 1, 2, 4. On April 7, 2023, Plaintiff filed an amended complaint which the Court found sufficiently stated a claim for relief, and Plaintiff filed a renewed motion to proceed IFP which the Court granted. ECF Nos. 5, 6. On June 6, 2023, the Defendant timely filed the AR. ECF Nos. 9, 10. On June 8, 2023, the Court issued an order setting mandatory settlement procedures and a briefing schedule. ECF No. 11. After receiving extensions of the deadlines, both parties timely filed their pleadings. ECF Nos. 14, 16, 21.

## ALJ's DECISION

On December 4, 2020, the ALJ issued a written decision wherein he determined that Plaintiff was not disabled as defined by the Social Security Act. AR 23-39. The ALJ evaluated Plaintiff's entitlement to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the standard five-step analytical framework as outlined in 20 C.F.R. § 404.1520(a). Id. As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Social Security Act for purposes of DIB through December 31, 2024. AR 28.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 19, 2019, Plaintiff's alleged onset date. Id. At step two, the ALJ found that Plaintiff had the "following severe impairments: tendonitis of the shoulders and residuals of right

shoulder surgery; residuals of cervical fusion; degenerative changes of the lumbar spine; a history of quadriparesis of the right arm and leg; and obesity." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30. Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned found that the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b), specifically as follows: he can lift and/or carry 20 pounds occasionally and ten pounds frequently; he can stand or walk for six hours of an eight-hour workday; he can sit for six hours of an eight-hour workday; he should never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he can occasionally reach overhead bilaterally; he can occasionally handle and finger with the right, non-dominant hand; and he should avoid concentrated exposure to extreme cold, vibration, unprotected heights, and moving and dangerous machinery.

Id. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. AR 33. However, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 34. Consequently, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 19, 2019, through December 15, 2021, the date of the ALJ's decision. AR 36.

## STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but, less than a preponderance...." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d

1028, 1035 (9th Cir. 2007)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks and citation omitted). The Court may not impose its own reasoning to affirm the ALJ's decision. See Garrison, 759 F.3d at 1010. "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The Court will not reverse if any error is harmless. Marsh v. Colvin, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and that a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ ... could have reached a different disability determination.") (internal citations and quotations omitted).

## DISCUSSION

Plaintiff presents two arguments that he asserts should result in a reversal of the ALJ's decision.  Brief.  The Court has reviewed and analyzed both arguments and for the reasons set forth below finds that the second argument correctly identifies an error that is not harmless and requires remand.  Because the second argument is dispositive of this challenge, the Court will not address the first argument regarding the ALJ's decision to discount the opinion of DPT Guerrero.[2]

---

[2] See Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Newton v. Colvin, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); and Berenisia Madrigal v. Saul, 2020 WL 58289, at *7 (E.D. Cal., Jan. 6, 2020) ("Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the ALJ erred in rejecting medical opinion evidence and failing to develop the record).

In his second argument, Plaintiff contends that the ALJ erred in his step five determination. Brief at 19-20. Plaintiff asserts that there was an obvious and apparent conflict between the VE's testimony and the requirements set forth in the United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") with regard to reaching, handling, and fingering and the ALJ failed to resolve the conflict. Id. Specifically, the ALJ's RFC limited Plaintiff to "occasionally reach overhead bilaterally" and "occasionally handle and finger with the right, non-dominant hand" and his hypothetical question to the VE included those limitations. Id.; see also AR 52-53 and 30. The VE opined that the hypothetical person could perform work as a router, order caller, and cashier II. AR 53. The DOT regulations indicate that all three jobs require frequent reaching and handling, order caller and cashier II also require frequent fingering, and router requires occasional fingering. See DICOT 222.587-038 (router), 1991 WL 672123; DICOT 209.667-014 (order caller), 1991 WL 671807; DICOT 211.462-010 (cashier II), 1991 WL 671840. Plaintiff argues that ALJ failed to resolve this obvious and apparent conflict and that the error is not harmless. Brief at 19-20.

Defendant contends that "Plaintiff fails to identify apparent conflicts at step five to support his request for remand." Oppo. at 5. Specifically, Defendant states that "the Ninth Circuit has already held that overhead reaching is not 'such a common and obvious part of cashiering that the ALJ should have recognized a conflict [with the DOT] and questioned the expert more closely before concluding that' a [plaintiff] who was precluded from overhead reaching with one arm could 'work as a cashier.'" Id. at 6 (citing Gutierrez v. Colvin, 844 F.3d 804, 807-08 (9th Cir. 2016)). Defendant further argues that "the DOT's job descriptions regarding the two other positions the vocational expert identified [order caller and router] also lack any apparent conflict with a restriction to reaching overhead." Id. Defendant does not address Plaintiff's argument that the ALJ failed to address the conflict between the VE testimony and the DOT requirements with regard to handling and fingering. See Oppo.

A. VE Testimony

During the December 1, 2021 hearing, the ALJ questioned VE Robin Scher about Plaintiff's past work and other jobs in the national economy that Plaintiff could perform based on Plaintiff's

impairments, and Plaintiff's counsel also questioned the VE on the same topics. AR 52-55. The relevant portions the VE's testimony are as follows:

> ALJ: In this case we have one hypothetical and a hypothetical claimant age 46 at the alleged onset date with 12 years of education, one past job with SGA previously described. […] He can occasionally reach overhead bilaterally, he can occasionally finger and handle with the right non-dominant hand, […] Given those restrictions and those alone, could this hypothetical claimant return to any past relevant work?
>
> VE: No.
>
> ALJ: Would there be any other work that would fit with this hypothetical at the light level?
>
> VE: So, Judge, I want to point out the DOT does not speak to at what height a person must reach in order to seek the handiness, so for this I am relying on my 30 plus years of experience. Yes, so there are jobs. There would be router, this is R-O-U-T-E-R, sometimes called router, DOT number 222.587-038, it is of light strength level with an SVP of 2. There are approximately 31,000 nationally, 3-1 thousand. There would be order caller, DOT number 209.667-014, it is a light strength level with an SVP of 2. There are approximately 12,000 nationally, that's 1-2 thousand. And then there would be cashier II, DOT number 211.462-010, it is a light strength level with an SVP of 2. There are approximately 534,000 nationally, that's 5-3-4 thousand.
>
> ALJ: When you mentioned reaching, were you referring to the fact that the DOT does not discriminate between reaching above the shoulder as opposed to reaching at other levels, such as waist levels?
>
> VE: Yes, that's correct.
>
> ALJ: And so you were using your education and experience to determine whether or not occasional overhead reaching was consistent with those three jobs, is that correct?
>
> VE: Yes.

> ALJ: And other than your use of your education and experience in that instance, has your testimony been consistent with the DOT and Selected Characteristics of Occupations?
>
> VE: Well, I also mentioned that handiness and that same thing, so, yes, I am consistent with the DOT.
>
> ALJ: Questions, counsel?
>
> Plaintiff's counsel: Ms. Scher, I'd like you to assume this hypothetical for me, please. I'd like to assume a claimant who is restricted to sedentary work only, ambulates with the use of a cane and with the non-dominant arm is restricted to no handling, no fingering and no forward reaching. Does that allow for past work?
>
> VE: No.
>
> Plaintiff's counsel: All right. I have no more questions for Ms. Scher.

AR 52-54.

### B. DOT Descriptions of Router, Order Caller, and Cashier II

The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations." Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016). The "DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces." Social Security Ruling ("SSR") 1 00-4p, 2000 WL 1898704, at *2 (2000). The term "occupation," as used in the DOT, refers to the collective description of those jobs, and each occupation represents numerous jobs. Id.; see also Gutierrez, 844 F.3d at 807. As such, the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Id. at 3.

The DOT describes the daily duties and responsibilities of a router as, "stamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts." DICOT 222.587-038 (router), available at 1991 WL 672123. The maximum requirements for a router include the ability to frequently (1/3 to 2/3 of the time) reach, frequently handle, and occasionally (up to 1/3 of the time) finger. Id. As indicated by the DOT, an order caller "read[s] items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available." DICOT 209.667-014 (order caller), available at 1991 WL 671807. The maximum requirements for an order caller include frequent reaching, handling, and fingering. Id. The DOT explains that cashier II

> [r]eceive[s] cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps.

DICOT 211.462-010 (cashier II), available at 1991 WL 671840. Cashier II includes maximum requirements of frequent handling, fingering, and reaching. Id.

C. Relevant Law

At step five of the sequential evaluation process, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (citing 20 C.F.R. §

416.920(g)). In making a disability determination at this step, the ALJ relies primarily on the DOT for "information about the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ also may use "testimony from [VEs] to obtain occupational evidence." Massachi, 486 F.3d at 1153; see also Zavalin, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. See SSR 00-4p, 2000 WL 1898704, at *2; Massachi, 486 F.3d at 1153. But when conflicts occur, neither the DOT nor the VE's evidence automatically trumps. Massachi, 486 F.3d at 1153 (citing SSR 00-4p, 2000 WL 1898704, at *2).

"When there is an apparent conflict between the [VE]'s testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT and if it does, must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016); see also Massachi, 486 F.3d at 1153-54; SSR 00-4p, 2000 WL 1898704, at *4. "The ALJ must then determine whether the [VE]'s explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." Massachi, 486 F.3d at 1153. A failure to ask the VE whether his or her testimony conflicts with the DOT may be harmless error if there is no conflict, or if the VE provides "sufficient support for [his or] her conclusion so as to justify any potential conflicts." Id. at 1154; see also Hann v. Colvin, 2014 WL 1382063, at 15 (N.D. Cal. Mar. 28, 2014).

The Ninth Circuit has explained that the conflict must be "obvious or apparent" to trigger the ALJ's obligation to inquire further. Gutierrez, 844 F.3d at 808. "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." Id. For example, in Gutierrez, the claimant could not reach above shoulder level with her right arm. Id. at 807. The VE opined that she could work as a cashier, and the ALJ did not specifically question the VE about how the claimant could do this considering her inability to reach overhead with her right arm. Id. On appeal, the claimant argued that the

ALJ should have recognized a conflict between the DOT and the VE's testimony and questioned the VE more thoroughly about the discrepancy. Id. The court held there was no error because, based on common experience, it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for one to need to reach overhead with both arms. Id. Of course, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," and the more obscure the job, the less likely common experience will dictate the result. Id. at 808; see also Lamear v. Berryhill, 865 F.3d 1201 (9th Cir. 2017) (opining that common experience did not dictate that it was "likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to "handle, finger and feel with the left hand" could perform these jobs" and concluding that the ALJ should have asked the "VE to explain in some detail" why there is no conflict).

### C. Analysis

Initially, the Court must determine whether the conflict between the VE's testimony and the DOT requirements was apparent and obvious. With regard to reaching, the Ninth Circuit determined in Gutierrez, 844 F.3d at 807, that the conflict was not apparent and obvious. In that case, the VE testified that the Plaintiff could work as a cashier, which the DOT indicated required frequent reaching, despite her inability to reach above shoulder level with her right arm. Id. The Ninth Circuit held that the conflict was not apparent and obvious because "common experience" indicates it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for a person to need to reach overhead with both arms. Gutierrez, 844 F.3d at 808–09.  The Court finds that the Gutierrez rationale is equally applicable to this case—that is, common experience tells us that it is unlikely and unforeseeable that a router, order caller, or casher would need to reach overhead frequently, especially with both arms. Moreover, the ALJ in this case explicitly asked the VE about the reaching conflict and the VE explained that she was using her education and experience to make the determination. AR 54-55. In his decision, the ALJ noted that the DOT does "not specify height in conjunction with reach requirements" and that he relied on the VE's education and experience in determining that the Plaintiff could perform the three jobs identified by the VE. Id. at 36. Based upon the

Ninth Circuit's decision and rationale and the facts of this case, the Court finds that the ALJ did not err in determining that the Plaintiff could perform the jobs identified by the VE despite the difference between the DOT requirements and the limitations set forth in the RFC with regard to reaching.

The analysis and conclusion are different as to the handling and fingering limitations. Initially, the Court finds there is a clear conflict because the DOT says that all three jobs require frequent handling and two of them (order caller and cashier II) require frequent fingering, all of which conflict with the occasional limitations set forth in the RFC. Second, the Court finds the conflict is apparent and obvious as the DOT job descriptions include essential, integrated, or expected work activity that indicates a need to be able to handle and finger frequently and to do so with both hands. See e.g. Router ("[s]tamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes); Order Caller (includes "gather[ing] and assembl[ing] items" and "prepar[ing] bills for items" and "[i]ndicat[ing] on order sheets items located and items that are not available"); Cashier II (includes receiving cash, computing bills and lists, using a cash register, and preparing reports). Finally, the Court finds that it cannot rely on "common experience" to determine that it is likely and foreseeable that a person with Plaintiff's handling and fingering limitations could perform the jobs identified by the VE and ALJ. As discussed above, the identified jobs include essential work that appears to involve frequent handling and fingering and involve both hands. For example, all of the aforementioned positions require individuals to write, type, receive items (including boxes and papers), and manipulate items with their hands at a constant rate.

The ALJ did not explicitly ask the VE about the handling and fingering conflicts but he did ask about the reaching conflict. AR 53-54. After the VE provided her response to the reaching conflict, the ALJ asked "other than your use of your education and experience in that instance, has your testimony been consistent with the DOT and Selected Characteristics of Occupations?" Id. at 54. The VE responded, "[w]ell, I also mentioned that handiness and that same thing, so, yes, I am consistent with the DOT." Id. The VE's handiness comment was in response to the ALJ's hypothetical and she stated "I want to point out the DOT does not speak to at what height

a person must reach in order to seek the handiness, so for this I'm relying on my 30 plus years of experience." AR 53. The ALJ did not clarify what the VE meant by "height the person must reach in order to seek the handiness" and whether the VE was opining about reaching limitations or handling limitations. Id. at 53-54. The VE also did not explain how an individual that is limited to occasional handling and fingering with one hand would be capable of performing the identified jobs that require frequent handling and fingering, whether unilaterally or bilaterally and dominant or non-dominant. Id. The ALJ did not ask any additional questions regarding fingering, handling or the fingering and handling conflicts. Id. at 55. Nonetheless, in his decision, the ALJ stated that the VE "stated that the DOT did not specify height in conjunction with reaching requirements or address hand dominance relative to manipulative limitations and that her testimony regarding these subjects reflected her education and professional experience." AR 36. The ALJ then relied on the VE's qualifications in accepting her opinions and "confirm[ed] that the vocational expert's remaining testimony pertaining to the residual functional capacity specified in Finding 5 was consistent with the information contained in the DOT." Id.

Based upon the evidence in the record, the Court finds there was an obvious and apparent conflict between the DOT and the VE's testimony and opinions regarding handling and fingering. The Court further finds that the ALJ did not adequately address and resolve the conflict because he did not explicitly ask the VE about the conflict, the VE's testimony was contradictory and confusing, the ALJ did not ask questions to clarify the VE's testimony or to obtain additional information regarding the conflicts, the ALJ's conclusion about the VE's testimony regarding hand dominance is not supported by the VE's actual testimony, and the ALJ relied on the VE's testimony and opinion to support his non-disability decision. Notably, Defendant did not address the conflict regarding handling and fingering and did not provide any law or facts to support the ALJ's decision. See Oppo.

While neither party cited nor addressed the Ninth Circuit's opinion in Lamear v. Berryhill, 865 F.3d 1201, the Court finds it instructive. In Lamear, the ALJ determined that the claimant could occasionally handle and finger with his non-dominant hand and arm. Id. at 1203. The VE testified that a person with those limitations could perform three jobs (office helper, mail

clerk, and parking lot cashier) "even though the DOT states that these jobs require "frequent" handling, fingering and reaching." Id. The ALJ relied on the VE's testimony and opinion and found the claimant was not disabled. Id. at 1204. In reversing the ALJ, the court noted that "[t]he VE did not explain how [claimant] could do this work with his left hand and arm limitations and the ALJ never asked the VE to reconcile any potential inconsistency between [claimant's] manipulative limitations and the DOT's job descriptions." Id. The court determined that they "cannot say that, based on common experience, it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties" and noted that the DOT's job descriptions "strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." Id. at 1205. In reaching this decision, the court emphasized that "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." Id. The court also rejected the Commissioner's request to find the error harmless "by presuming that the handling, fingering, and reaching requirements are unilateral since the DOT does not expressly state that they demand both hands." Id. at 1206. In doing so, the court again stated that they cannot do so because they "cannot determine from this record, the DOT, or our common experience whether the jobs in question require both hands." Id.

The Court finds that the Lamear analysis and holding support the Court's determination that the ALJ in this case erred by failing to ask the VE to explain "in some detail" how or why a person with Plaintiff's handling and fingering limitations could perform the identified jobs. Id. at 1205; Massachi, 486 F.3d at 1153 (an ALJ must obtain testimony from the VE and then determine whether "the [VE]'s explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]"). The Court also finds that the jobs identified in this case are similar to those identified in Lamear such that common experience cannot be used to determine that it is "likely and foreseeable" that the "essential, integral, or expected" job requirements can be performed by a person with Plaintiff's handling and fingering limitations. Finally, the Court finds that Lamear supports the conclusion that the handling and

fingering conflicts at issue in this case were apparent and obvious, that the ALJ needed to question the VE about the conflicts, and that the ALJ failed to do so and failed to properly resolve the conflicts. Thus, the ALJ erred at his Step Five determination.

D. <u>Harmless Error Analysis</u>

Having concluded the ALJ erred at step five, the Court must now determine whether such error was harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.' " <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting <u>Carmickle</u>, 533 F.3d at 1162). In assessing whether an error is harmless, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." <u>Id</u>.

Here, the ALJ's errors were not harmless. The ALJ's step five analysis was fundamentally flawed.  There was an obvious and apparent conflict between the VE's testimony and the DOT requirements with regards to handling and fingering and the ALJ failed to question the VE regarding those conflicts.  In addition, the VE's testimony was confusing and contradictory with regard to those conflicts and the ALJ failed to clarify the VE's testimony.  Finally, the ALJ relied on testimony the VE did not provide and the testimony that the VE did provide did not support the ALJ's determination.  See <u>Lamear</u>, 865 F.3d at 1206 (step five error of failing to question the VE and resolve the apparent and obvious conflict was not harmless and the court could not presume the handling and fingering requirements were unilateral); <u>Stout v. Comm'r of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

E. <u>Appropriate Remedy</u>

Having concluded the ALJ committed harmful error, the final issue for the Court to consider is whether to remand for further proceedings or to simply award benefits to Plaintiff. The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court. See <u>Aida I. v. Saul</u>, 2020 WL 434319, at *5 (S.D. Cal., Jan. 28, 2020) (noting that "[t]he law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.") (citing <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir.

1989); and Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).  Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. See Gerde v. Berryhill, 717 Fed. Appx. 674, 677 (9th Cir. 2017) ("[r]emand for further administrative proceedings to consider Dr. Alvord's opinion and the lay witness testimony is the proper remedy because enhancement of the record would be useful.") (citing Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)).  On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose "the district court should remand for an immediate award of benefits." Benecke, 379 F.3d at 593. A remand for an immediate award of benefits is appropriate only in rare circumstances.  Id.

The Court notes that neither party disagrees in their pleadings that reversal and remand are the proper remedies should the Court overturn the ALJ's decision. See Brief at 20; Reply at 5; Oppo. at 7. The Court finds that an immediate award of benefits is unwarranted in this case as further proceedings would serve a meaningful purpose for the reasons set forth above. See Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule"); see also Howland v. Saul, 804 Fed. Appx. 467, 471 (9th Cir. 2020) (same). Accordingly, the Court finds the proper remedy is to remand for further proceedings in accordance with this order.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Brief and **REVERSES AND REMANDS** for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: 5/3/2024

Hon. Barbara L. Major
United States Magistrate Judge